UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEPOMED, INC. and GRUNENTHAL GMBH,<br><br>      Plaintiffs/Counterclaim<br>      Defendants<br><br>    v.<br><br>ACTAVIS ELIZABETH LLC and ALKEM<br>LABORATORIES LIMITED,<br><br>      Defendants/Counterclaim<br>      Plaintiffs. | Civil Action No. 13-4507 (CCC) |

AND CONSOLIDATED CASES

Civil Action No. 13-7803 (CCC)
Civil Action No. 13-6929 (CCC)
Civil Action No. 14-3941 (CCC)
Civil Action No. 14-4617 (CCC)
Civil Action No. 15-6797 (CCC)

**CLERK'S OPINION GRANTING IN PART AND DENYING IN PART
DEPOMED'S MOTION TO TAX COSTS**

This matter has come before the Clerk on the motion [Dkt. Entry 584][1] of

Plaintiff/Counterclaim Defendant Depomed, Inc. ("Depomed") to tax costs against

Defendants/Counterclaim Plaintiffs Actavis Elizabeth LLC, Actavis UT (collectively,

"Actavis"), Alkem Laboratories Limited ("Alkem"), and Roxane Laboratories, Inc. ("Roxane")

(collectively, "Defendants") pursuant to Fed. R. Civ. P. 54 (d) and Local Civil Rule 54.1.

---

[1]      Unless otherwise noted, references herein are to Docket Entries in the lead case,
Civ. A. No. 13-4507.

Defendants oppose this motion.

This is the first of two motions to be considered by the Clerk in these consolidated cases. A second opinion will address the separate motion of Plaintiff Grunenthal GmbH ("Grunenthal") to tax costs against these same Defendants.

In these six consolidated Hatch-Waxman cases, Depomed and Grunenthal (together, "Plaintiffs") asserted that three of their patents were infringed by the Defendants' filing of Abbreviated New Drug Applications .[2] The patents-in-suit, i.e., U.S. Reissue Patent No. 39,593 (the "RE593 patent"), U.S. Patent No. 7,994,364 ("the '364 patent") and U.S. Patent No. 8,536,130 ("the '130 patent") are directed to compositions and methods relating to Plaintiffs' NUCYNTA® tapentadol hydrochloride products. Grunenthal owns the patents and licenses them to Depomed. Plaintiffs asserted that Defendants' generic versions of tapentadol hydrochloride products for which they sought approval from the United States Food and Drug Administration ("FDA") infringed their patents.[3]

---

[2]    A fourth patent, U.S. Patent No. 8,309,060 ("the '060 patent"), was asserted by Plaintiffs against Actavis only and all related proceedings were stayed by Order of November 19, 2015 [Dkt. Entry 287], pending the appeal to the United States Court of Appeals for the Federal Circuit from a decision of the Southern District of New York finding the claims of that patent to be invalid.

[3]    The parties were distilled to the currently named, but during the course of the litigation included plaintiff Janssen Pharmaceuticals, Inc. and defendants Ascend Laboratories, LLC (13-4507), Actavis LLC, Actavis, Inc. (Civ. A. Nos. 13-4507, 15-6797), Sandoz (Civ. A. Nos. 13-7803, 13-6929 ) and Watson Laboratories, Inc. (which was replaced by Actavis Laboratories UT, Inc. ("Actavis UT")) (Civ. A. No. 14-4617), and counterclaim defendant NPS Pharmaceuticals, Inc. (13-4507). All of these parties were dismissed. However, Actavis LLC and Actavis Inc., dismissed as defendants by stipulations, agreed to be bound by orders entered against Actavis Elizabeth LLC ("Actavis Elizabeth"). (Actavis UT was accused of infringing the RE593 and '364 patents, but not the '130 patent.) While the lead case was filed on July 25, 2013, Depomed only became a plaintiff on May 6, 2015 [Dkt. Entry 72], when it acquired the U.S. rights to the Nucynta products from Janssen.

The Clerk, who is somewhat hampered by the sealing of many of the docket entries, gives a very cursory procedural history herein. As in the normal course of Hatch-Waxman litigation, the Defendants filed counterclaims for declaratory judgments of non-infringement, invalidity and/or unenforceability of the patents. The cases were governed by a Stipulated Discovery Confidentiality Order [Dkt. Entry 127] and a Stipulation and Order Concerning Protocol for Discovery of Electronically Stored Information [Dkt. Entry 154]. They proceeded through a Markman hearing on the claims of the RE593 and '364 patents on November 25, 2014 [Dkt. Entry 180], and the filing of in limine motions on January 11, 2016 [Dkt. Entries 301-04].

By January 25, 2016, all six cases were consolidated for all purposes, including trial. [Dkt. Entry 326]. The various in limine motions were denied on February 22, 2016 [Dkt. Entry 364], and so too were Plaintiffs' and Roxane's motions for summary judgment, and Plaintiffs' motion to dismiss Actavis Elizabeth's third counterclaim to correct or delete the use code for the '130 patent on March 4, 2016. [Dkt. Entries 390-94].

Also on March 4, 2016, the parties entered into a Stipulation and Order of Infringement, whereby they agreed that the Defendants would be liable for infringement of each asserted claim of the RE593 and '364 patents found to be not invalid. [Dkt. Entry 400].

On March 6, 2016, the parties consented to the bifurcation of Actavis Elizabeth's third counterclaim from the trial. [Dkt. Entry 407].

The Court conducted a 10-day bench trial on March 9-11, 14-17, 21-23, 2016 [Dkt. Entries 409, 412, 414, 416-19, 421-23]. Between the conclusion of the trial and closing arguments on April 27, 2016 [Dkt. Entry 460], the parties filed post-trial briefs and proposed findings of fact and conclusions of law [Dkt. Entries 448-49, 451-52, 454-57].

On May 18, 2016, the Court enjoined the Defendants from launching their allegedly infringing products pending the earlier of the entry of the Court's trial decision or September 30, 2016. [Dkt. Entry 468].

The Court issued its trial order on September 30, 2016 [Dkt. Entry 537], finding no invalidity of the three patents, or unenforceability of the '364 patent. Therefore, pursuant to the Stipulation and Order of Infringement, all Defendants were found to have infringed the RE593 and '364 patents. Alken alone, not Actavis Elizabeth or Roxane, was determined to have induced infringement of the '130 patent. The injunction was renewed, pending the Court's entry of final judgment. Also, Actavis Elizabeth's third counterclaim was severed from the action and returned to the reopened Civ. A. No. 15-6797.

On October 28, 2016, Alkem filed a notice of appeal to the Federal Circuit [Dkt. Entry 540] but the appeal was deactivated due to Actavis' pending severed third counterclaim [Dkt. Entry 560]. However, the FDA changed the use code for the '130 patent and consequently, on January 30, 2017, Actavis and Depomed consented to the withdrawal of Actavis Elizabeth's third counterclaim without prejudice. Civ. A. No. 15-6797 [Dkt. Entry 87].

Thereafter, the parties exchanged letters concerning the proposed form of final judgment, disagreeing on the taxation of costs. Actavis asserted that taxation should be stayed pending the appeal and that it was also premature because the judgment to be entered would be certified pursuant to Fed. R. Civ. P. 54(b) due to the pending, stayed proceedings on the '060 patent. [Dkt. Entries 556, 566, 569]. Actavis argued that taxation should await final judgment as to all claim against all parties. Alternatively, it maintained that Plaintiffs were not the prevailing

party because Roxane and Actavis Elizabeth prevailed on the infringement of the '130 patent, a central issue in the case. Further, Actavis argued that the Court could find that neither party prevailed or that even if Plaintiffs were deemed the prevailing party, the Court should exercise its discretion in this case of mixed judgment and not award Plaintiffs any costs. [Dkt. Entry 569].

Depomed's position was that Plaintiffs were the prevailing party because they prevailed on all but one adjudicated issue and that in accordance with this Court's local rule, a judgment on costs should not be stayed pending the appeal. [Dkt. Entry 565, 570]. Rather, the Court was required to make the determination of the prevailing party following the trial on the merits and there was no just reason to delay an award in this costly litigation. Also, piecemeal litigation could be avoided by including the appeal of this Court's cost decision with the appeal on the merits of the case.

The Court ultimately accepted Depomed's position. On April 11, 2017, the Court entered its Final Judgment and Injunction [Dkt. Entry 582], reflecting the findings of its September 30 order in favor of Plaintiffs on all claims except the claims of infringement of the '130 patent by Actavis Elizabeth and Roxane. Due to the pending '060 patent proceedings, the Court certified pursuant to Fed. R. Civ. P. 54(b) that there was no just reason for delay in entering final judgment as to all claims adjudged in that final judgment. The Court further ordered that "[p]ursuant to Fed. R. Civ. P. 54, Plaintiffs are the Prevailing Party entitled to costs" and that "Plaintiffs shall serve and file their Bill of Costs and Disbursements in accordance with Local Rule 54.1."[4] Id.

_____

[4]    The Court entered a Corrected Final Judgment and Injunction Nunc Pro Tunc [Dkt. Entry 616] on September 20, 2017, to remove the erroneous references in the original to Actavis LLC and Actavis, Inc. but indicated that the correction did not alter the stipulations whereby those entities agreed to by bound by the Court's Final Judgment and Injunction.

In accordance therewith, on May 10, 2017, Plaintiffs each filed a bill of costs. [Dkt. Entries 584-1, 584-3].

On May 9 and 10, 2017, Alkem, Roxane and Plaintiffs all filed notices of appeal to the Federal Circuit. [Dkt. Entries 583, 586, 587]. The appellate court reactivated Alkem's appeal and consolidated them all on May 25, 2017. [Dkt. Entry 608]. They remain pending.

Now before the Clerk is Depomed's bill of costs, amounting to $282,666.33, and consisting of the fees for: filing ($1,600.00); service ($388.34); printed and electronically recorded transcripts ($41,320.43); witnesses ($58,151.92); exemplification and copies ($132,125.64); and trial support technicians ($49,080.00). [Dkt. Entry 584-1]. Defendants object to all categories of costs except for the filing and service fees.

## I.  Standards for Awarding Costs

Depomed's motion is controlled by Fed. R. Civ. P. 54(d) (1), which provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs---other than attorney's fees---should be allowed to the prevailing party."

In patent cases, the definition of "prevailing party" is governed by Federal Circuit law, which defines that term as one who obtains relief on the merits of its claim that materially alters the legal relationship between the parties by modifying its opponent's behavior in a way that directly benefits that party. Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1181-82 (Fed. Cir. 1996) (citing Farrar v. Hobby, 506 U.S. 103, 111-13 (1992)).

While the first inquiry of determining prevailing party status is a matter of Federal Circuit law, the second, i.e., that of whether and how much to tax, is a matter of regional circuit law. Id. at 1183. Therefore, Third Circuit law controls the Clerk's decision as to the types and amount of costs to be taxed.

In this Circuit, there is a strong presumption in favor of awarding costs to the prevailing party. "'Only if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party.'" Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (quoting In re Paoli RR Yard PCB Litig., 221 F.3d 449, 468 (3d Cir. 2000)).

Despite the presumption favoring the prevailing party, the district court and Clerk may tax only those types of costs set forth in 28 U.S.C. § 1920:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987).

More recently, the Supreme Court reiterated that § 1920 taxable costs are "limited to relatively minor, incidental expenses," and are "narrow in scope." Taniguchi v. Kan Pacific Saipan, Ltd., 566 U.S. 560, 573 (2012). In Taniguchi, the Court interpreted the "compensation of interpreters" provision in § 1920 (6) as allowing for the cost of oral translation but not document translation. While this specific subsection of § 1920 is not invoked here, the Clerk is cognizant of the Supreme Court's overriding concern with curbing taxable costs.

In applying the above principles, a prevailing party's costs "often fall well short of the party's actual litigation expenses." In re Paoli, 221 F.3d at 458. Moreover, despite the presumption of granting costs to a prevailing party, that party must provide sufficient

information to carry its burden of showing that the costs sought fall within the limits of § 1920.

Romero v. CSX Transp., Inc. 270 F.R.D. 199, 201-202 (D.N.J. 2010).

In addition to Rule 54(d) and 28 U.S.C. § 1920, the Clerk's decision is guided by Local Civil Rule 54.1, which "establishes the general procedures to be followed in those cases where a party is entitled to recover costs" under § 1920. Lite, N.J. Federal Practice Rules, Comment 2 to Rule 54.1 (Gann 2018 ed.) at 284.

Pursuant to Manildra Milling, Plaintiffs are the prevailing party because the Court's finding of infringement of the patents-in-suit materially altered the legal relationship of the parties in a way that directly benefitted Plaintiffs. Moreover, this Court already made such a determination, after having reviewed the parties' letter submissions, and so provided in its final judgment.

Additionally, Depomed has complied with the procedural requirements of L. Civ. R. 54.1, as mandated by the final judgment. It timely filed and served a notice of motion, verified AO 133 form, Plaintiff Depomed, Inc.'s Bill of Costs and Disbursements ("Depomed's Bill of Costs"), and the Declaration of Michael A. Sitzman, Esq. ("Sitzman Decl."), appending supporting invoices. [Dkt. Entry 584]. Therefore, the Clerk will now examine the specific costs requested by Depomed, in the order in which they appear in § 1920.

## II.     Fees of the Clerk and Marshal, § 1920 (1)

Under subsection (1) of § 1920, Depomed seeks the cost of filing five of the six complaints as a fee of the clerk and that of serving the complaints as a fee of the marshal. Defendants do not object to either cost.

### A.  Filing Fees

Depomed asks for the cost of filing five of the six complaints, i.e., all but Civ. A. No.

-8-

13-6929 (for which Grunenthal asks), or $400.00 each. These fees consist of the $350.00 fee

set forth in 28 U.S.C. § 1914(a) for the filing of a civil action, and the $50.00 administrative

fee established in the Judicial Conference's "District Court Miscellaneous Fee Schedule."

Subsection (b) of § 1914 allows the clerk to collect fees in addition to the $350.00 fee of

subsection (a), as prescribed by the Judicial Conference. Accordingly, the entire $400.00

amount per complaint constitutes "fees of the clerk."

The Clerk notes that the $400.00 fee was paid for each of these five complaints, Sitzman

Decl., Ex. 2, and yet, Depomed mistakenly asks for just $1,600.00. The Clerk will award

**$2,000.00** in filing fees.

### B. Service of Process

Depomed wishes to recoup a total of $388.34 paid to private process servers as a

§ 1920 (1) fee of the marshal. This consists of service of the summons and complaint in Civ.

A. No. 13-4507 upon Ascend Laboratories ($120.00), the "Actavis Defendants" ($90.00), and

Alkem ($95.00), and the summons and complaint in Civ. A. No. 14-4617 upon Watson ($83.34).

Sitzman Decl., Ex. 3.

Subsection (1) explicitly authorizes taxation of the costs of just the "clerk and marshal."

However, this Court has held that the fees of private process servers are taxable under the

combined reading of § 1920 and § 1921, which allows the court to tax as costs the fees for

serving a subpoena on a witness. Ricoh Corp. v. Pitney Bowes Inc., Civ. No. 02-5639, 2007 WL

1852553, at *3 (D.N.J. June 26, 2007); Hurley v. Atlantic City Police Dep't, Civ. Nos. 93-260,

94-1122, 1996 WL 549298, at *8 (D.N.J. Sept. 17, 1996).

Therefore, the Clerk taxes this cost as well, with the exception of the $120.00 cost of

service on Ascend. The Clerk will not tax against these Defendants the cost of service on a party

which was dismissed from the lead case about two months after its filing.  [Dkt. Entry 64].
The cost of service is taxed in the amount of **$268.34**.

Combining the costs of filing and service, § 1920 (1) costs are taxed in the total amount
of **$2,268.34**.

### III.    Costs of Printed or Electronically Recorded Transcripts, § 1920 (2)

Pursuant to § 1920 (2), Depomed requests the $41,320.43 cost of printed hearing
transcripts and both printed and videotaped deposition transcripts.  Defendants oppose both.

**A.  Hearing Transcripts**

Of the requested total, $11,380.78 consists of the cost of the transcripts of the March 8,
2016 Pretrial Conference, the 10-day trial and summations on April 27, 2016.

As the parties recognize, fees for recorded transcripts are taxable under § 1920 (2)
if the transcripts were "necessarily obtained for use in the case."  Local Civil Rule 54.1(g) (6)
identifies circumstances under which the transcripts will be deemed necessary:

> The cost of a reporter's transcript is allowable only (A) when specifically
> requested by the Judge, master, or examiner, or (B) when it is of a statement
> by the Judge to be reduced to a formal order, or (C) if required for the record
> on appeal. . . Copies of transcripts for an attorney's own use are not taxable in
> the absence of a prior order of the Court.  All other transcripts of hearings,
> pretrials and trials will be considered by the Clerk to be for the convenience
> of the attorney and not taxable as costs.

Defendants maintain that none of the costs are recoverable because the transcripts merely
served the convenience of counsel. They assert that Depomed has not segregated from an entire
set of transcripts those pages which were actually used, that the invoices do not separate taxable
from non-taxable services and further, that there is a discrepancy between the rates charged by
different court reporters.  Defs.' Opp. at 2-4.

The Clerk is satisfied with the explanations given by Depomed for the necessity of the hearing and trial transcripts. As for the hearing transcript, Defendants have not refuted Depomed's statement that "[d]uring the Pretrial Conference, the Court provided direction as to several evidentiary matters that later arose during the trial," Dep.'s Bill of Costs at 4-5 n.6.

Regarding the daily trial transcripts, Depomed has indicated several uses of them. It has cited specific instances where the daily trial transcripts were used at trial. Dep.'s Reply at 3. Both sides cited heavily to the trial transcripts in their Proposed Findings of Fact, upon which the Court relied in writing its opinion, as well as citing to the individual trial witnesses' testimony. [Dkt. Entry 536]. Furthermore, due to the large number of exhibits to be admitted into evidence, the Court and the parties adopted a procedure whereby the daily transcript of the prior days of trial would be used to admit exhibits into evidence. As stated by Depomed's counsel on the third day of trial, "I think we agree and all the defendants seem to agree we would like to refer to the transcript to enter some exhibits." [Dkt. Entry 427] 3/11/16 Tr. 4:7-10. By requiring the parties' submission of Proposed Findings of Fact and adopting this procedure for evidence admission, the Court implicitly requested that the parties order the daily trial transcripts.

However, the Clerk cannot find the transcript of the closing arguments necessary. Depomed's justification consists entirely of its counsel's averment that the "[t]ranscripts of the pretrial hearing and summations were utilized during the trial, for trial preparation, as well as for briefings and post-trial submissions and were therefore necessarily obtained for this case as a part of the daily trial transcripts." Sitzman Decl. ¶ 5. The transcript of the pretrial hearing may have been used for those trial purposes but the transcript of summations, which occurred on

April 27, 2016, a week after the parties submitted their Proposed Findings of Fact on April 19, 2016 [Dkt. Entries 449, 452], was not. Accepting the well-known legal precept that summations do not constitute evidence, the Clerk denies this $670.95 cost. Dep.'s Bill of Costs, Ex. 4.

Having found the transcripts of the Pretrial Conference and trial necessary, the Clerk must still address the specific arguments made by Defendants for denying their costs. First, Defendants make the impractical suggestion that the prevailing party must parse those pages of the transcripts actually used from those not, so that the Clerk can tax the cost of the former and not the latter. No support for this argument is given and the Clerk rejects it out of hand.

Secondly, Defendants object to taxing the full requested amounts on the ground that the invoices do not break out charges for non-taxable services. The Clerk has no reason to believe that services other than an original transcript were charged by court reporters Robert Tate and Charles P. McGuire. The Tate invoice merely shows the number of pages priced at $2.42 per page for the "original." Charles P. McGuire likewise charged the rate of $2.41 per page. The amounts of $1,834.01 and $537.24 invoiced by these two reporters will be taxed.

While two reporters used reasonable rates, Yvonne Davion's rate of $9.65 per page for the transcript of the Pretrial Conference and eight whole or partial days of trial is four times as much, as Defendants point out. Depomed responds that "[t]he higher-cost reporter, Yvonne Davion, was this Court's regular reporter at the time of the March 2016 trial, and Defendants have certainly not alleged that Plaintiffs should have procured a different reporter." Dep.'s Reply at 4. The Davion invoice does not indicate any special services, but the Clerk finds this rate to be too high for just an original of the transcript. If no other services were procured at that rate, it was incumbent upon Depomed to inquire why the rate was so high.

Davion's rate of $9.65 per page is exactly four times the rate of $2.41 per page and would appear to constitute the total amount charged to four parties. Depomed seeks to recoup $8,338.58 of the $18,354.30 total invoiced by Davion and does not explain the basis for this apportionment. Depomed paid a $5,000.00 deposit and then 25% of the balance of $13,354.30, or an additional $3,338.58. The requested amount constitutes approximately 45% of the total. Therefore, the Clerk taxes these pages at the $2.41 per page rate and allows Depomed 45% of the adjusted total of $4,583.82 (1902 pages @ $2.41 per page) or $2,062.72.

Hearing and trial transcripts are allowed in the total amount of **$4,433.97** ($1,834.01 + $537.24 + $2,062.72).

### B. Deposition Transcripts

Also pursuant to § 1920 (2), Depomed asks the Clerk to tax the $29,939.65 cost of printed and electronically recorded transcripts of the depositions of Defendants' experts ($9,983.95), Plaintiffs' experts ($10,562.90) and fact witnesses ($9,392.80). Its request in connection with printed transcripts for all of these witnesses excludes the costs of realtime, rough drafts, expedition, shipping and handling, exhibits and litigation support services. Depomed also seeks the videotaping costs for the depositions of Plaintiffs' testifying experts and fact witness, Jack Anders. For those same witnesses, Depomed requests the costs of video synchronization as well. Sitzman Decl., ¶¶ 6-8.

#### *Printed Transcripts*

Defendants initially objected to taxing most of the deposition transcripts, citing L. Civ. R. 54.1(g) (7), which limits the costs to those of "taking and transcribing depositions <u>used at trial</u>." (emphasis added). They argued that most of the transcripts were not used at the trial and that

certain invoices do not separate out the costs of printed transcripts from video services. Defs.' Opp. at 4-9. They repeated their argument, rejected above, that "Depomed has not met its burden of identifying whatever few handfuls of pages that were cited or necessary to support its claims." Id. at 5. Defendants initially asked the Clerk to tax only $12,115.54 of the requested $29,939.65. Id. at 8-9. However, after considering Depomed's reply, they concede that $23,469.65 should be granted, Def.s' Sur-Reply at 2, Ex. A.

In its reply, Depomed discusses the broad view, accepted not only by this Court, but nationwide, that "[f]or the costs to be taxable, the depositions need not have been used at trial, and must only 'appear reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'" Thabault v. Chait, Civ. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan 7, 2009) (quoting Datascope Corp. v. SMEC, Inc., Civ. No. 81-3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988)); Lewis v. City of Chicago, No. 04 C 6050, 2012 WL 6720411, at *5 (N.D. Ill. Dec. 21, 2012) ("[t]he proper inquiry is whether the deposition was 'reasonably necessary' to the case at the time it was taken, not whether it was used in a motion or in court").

The Third Circuit had held ten years earlier that the "used at trial" language of our local rule, upon which Defendants rely, had to yield to the less restrictive standard in § 1920 (2) of "necessarily obtained." In re Baby Food Antitrust Litig., 166 F.3d 112, 138 (3d Cir. 1999).

This Court has further stated that "[a]n attorney needs deposition transcripts to prepare for both direct and cross-examination even if the transcripts are not directly introduced into evidence during trial." Hurley, 1996 WL 549298, at *5.

The relevance of all of the deponents cannot be doubted. In connection with each of Defendants' and Plaintiffs' experts, Depomed asserts that the printed deposition transcript was

used in preparation for cross-examination and during examination at trial. Dep.'s Bill of Costs at 5-8. In its bench opinion, the Court cites the testimony of every one of these experts, on both sides, as well as the testimony of fact witness, Jack Anders, as having been given live at the trial. [Dkt. Entry 536]. The testimony of the remaining ten fact witnesses was included in the final deposition designations. Dep.'s Bill of Costs at 8-10.

In the event that Defendants still press their initial arguments, the Clerk addresses the two specific objections made by them. First, they contend that the invoices for the printed transcripts do not separate out the charges for videotaping services. A review of the invoices reveals that this is incorrect, as does the declaration of Lauren Grossman, Billing Manager of Veritext Legal Solutions ("Grossman Decl."), submitted with Depomed's reply. [Dkt. Entry 609-1].

Second, they maintain that the charges for expedition of the Anders transcript should be denied. Depomed bases the necessity of expedition on the fact that this fact witness, Depomed's Vice President of Finance, was deposed only 12 days before the commencement of trial and it argues that this Court has allowed such costs when exigencies so demand. Janssen Pharm. N.V. v. Mylan Pharm., Inc., Civ. Nos. 03-6220, 03-6185, 2007 WL 925535, at *8 (D.N.J. Mar. 23, 2007). Letters to the Court in February 2016 discuss at length the parties' dispute regarding the scope of this witness' anticipated trial testimony and Defendants' rejected in limine motion. [Dkt. Entries 339, 342-1]. Despite Depomed's objection to Defendants' deposing Anders so close to trial on the ground that Defendants had ample opportunity to do so long beforehand, Anders was deposed on February 26, 2016. Having reviewed the circumstances surrounding this deposition, the Clerk appreciates the need for expedition of this transcript and will tax its cost to Defendants.

As noted above, for these printed transcripts, Depomed asks for only the costs of the original plus certified copy or a certified copy, along with reporter attendance fees, and not extraneous charges which the Clerk has previously determined serve only attorney convenience or are in the nature of attorney's fees. All requested fees for printed transcripts are granted.

### *Videotaping Charges*

In addition to the above § 1920 (2) charges for printed transcripts, Depomed asks the Clerk to tax the videotaping charges of the depositions of Plaintiffs' experts, i.e., Joel Bernstein, Michelle Brown, Michael Ossipov and William Roush, as well as fact witness, Jack Anders. Requested charges include the costs of both the video-transcripts and synchronization and Ms. Grossman has clarified that the $95/hr. charge for "Video-Transcript Synchronization" consists of $60/hr. for the video-transcript and $35/hr. for the digitization and synchronization. Grossman Decl. ¶ 5.

In their sur-reply, Defendants maintain their objection to taxing any of these videotaping charges on the grounds that § 1920 (2) allows for the cost of either the printed transcript or the videotaped version but not both. Defs.' Sur-Reply at 2. Defendants also point out that the Clerk has previously found that the costs of video-synchronization are non-taxable. Defs.' Opp. at 7.

Depomed emphasizes that it is not requesting videotaping charges of depositions noticed by Plaintiffs, but only of those video depositions taken at the insistence of Defendants. Dep.'s Bill of Costs at 6-8 nn.8-9. As this Court has noted, "Defendants' actions alone, of serving video deposition subpoenas, seems to mean that the video depositions of these witnesses were considered by Defendants to be necessary for trial." Janssen Pharm., 2007 WL 925535, at *4.

The losing party which urges that video depositions be taken cannot later claim that it should not be responsible for the resulting charges.  Id.  Accordingly, the Clerk will tax the costs of the video-transcripts at $60/hr.

The Clerk agrees with Defendants, however, that the costs of video-synchronization are another matter.  Video synchronization is a service which times the videotape to the lines of the transcript and facilitates the editing of the videotape.  The Clerk has previously held that this is a non-taxable convenience to counsel which falls outside of the bounds of § 1920.  Mylan Inc. v. SmithKline Beecham Corp., Civ. No. 10-4809, 2015 WL 1931139, at *9 (D.N.J. Apr. 28, 2015) (quoting Kalitta Air L.L.C. v. Central Texas Airborne Sys. Inc., 741 F.3d 955, 959 (9th Cir. 2013)).  See also Brandon v. GlaxoSmithKline, LLC, Case No.: 7:15-cv-01804, 2018 WL 372307, at *3 (N.D. Ala. Jan. 11, 2018) ("Defendant offers no authority approving an award of costs for synchronizing a videotaped deposition, and courts have denied awarding such costs under § 1920 for such services," citing cases).  Depomed appears to recognize this in its reply. Dep.'s Reply at 8.

Therefore, from the total § 1920 (2) costs, the Clerk will deduct just the $35/hr. charges for the video-synchronization of the depositions of Plaintiffs' experts and Jack Anders, noticed by Defendants, as follows:  Joel Bernstein, 8/14/14 - 4 hrs. ($140.00); Joel Bernstein 10/1/15 - 7 hrs. ($245.00); Michelle Brown - 6.5 hrs. ($227.50); Michael Ossipov - 5 hrs. ($175.00); William Roush, 9/10/15 - 8 hrs. ($280.00); William Roush, 11/18/15 - 4.5 hrs. ($157.50); and Jack Anders - 5.5 hrs. ($192.50).  Dep.'s Bill of Costs, Exs. 6, 7.  Deducting this $1,417.50 sum from the requested total costs of $29,939.65, the costs of printed and electronically recorded deposition transcripts are taxed in the amount of **$28,522.15**.

Combining the costs of hearing ($4,433.97) and deposition ($28,522.15) transcripts, costs granted pursuant to § 1920 (2) amount to **$32,956.12**.

### IV.    Witness Fees, § 1920 (3)

Deposed wishes to recoup $58,151.92 as § 1920 (3) witness fees for the appearance at trial and deposition of its expert witnesses Joel Bernstein, Michelle Brown, Michael Ossipov and William Roush, as well as fact witnesses Jack Anders, Helmut Buschmann, Thomas Christoph, Michael Gruss and Juergen Haeussler.  Dep.'s Bill of Costs, Ex. 8.

Defendants oppose portions of all of the requested fees except for those of Jack Anders (save for a typographical error), Juergen Haeussler and William Roush's September 5, 2014 deposition.[5]  As a general matter, they do not contest any of the fees requested for attendance or lodging, but do maintain that the costs of first-class airfares should be halved.  Based upon circumstances and the asserted insufficiency of proofs, Defendants take issue specifically with the fees of Drs. Bernstein and Roush, which they ask the Clerk to fully deny or at most, tax at 50%.  They agree to the taxation of only $20,436.36 in witness fees.  Defs.' Opp. at 10-15.

As noted in our local court rule, allowable witness fees are controlled by § 1821:

(1) The fees of witnesses for actual and proper attendance shall be allowed, whether such attendance was voluntary or procured by subpoena. The rates for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821).  Witness fees and subsistence are taxable only for the reasonable period during which the witness was within the District.  Subsistence to the witness under 28 U.S.C. § 1821 is allowable if the distance from the courthouse

---

[5]       Defendants agree to taxing only $2,160.83 of Mr. Anders' fees, the sum derived from totaling $80.00 in attendance fees, $136.00 in lodging and $1,944.83 in travel expenses, per Deposed's chart, Dep.'s Bill of Costs at 11.  However, the Clerk has found that the figure of $1,944.83 is a typographical error because receipts support travel costs totaling $1,994.83. Therefore, Deposed's requested total of $2,210.83 is correct and will be granted.

-18-

to the residence of the witness is such that mileage fees would be greater than subsistence fees if the witness were to return to his or her residence from day to day.

L. Civ. R. 54.1(g) (1).

L. Civ. R. 54.1(g) (7) further provides that "[f]ees for the witness at the taking of a deposition are taxable at the same rate as for attendance at trial. (See L. Civ. R. 54.1(g)(1).)"

Section 1821 of Title 28 provides for the payment of witnesses' fees and allowances for their attendance in federal court and at depositions. 28 U.S.C. § 1821(a) (1). Subsection (b) therein allows a $40 per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." Subsection (c) allows for the actual expenses of travel over "the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance," using "a common carrier at the most economical rate reasonably available." Recoverable transportation costs include a mileage allowance for travel by privately owned vehicle at rates prescribed by the Administrator of General Services ("GSA"), toll charges, taxicab fares and parking fees. Subsection (d) allows for a subsistence fee for a required overnight stay, provided that the per diem rate does not exceed the allowance established by the GSA, pursuant to 5 U.S.C. § 5702(a), in the area of attendance. While subsection (d) allows for both lodging and meals, Depomed asks for just the former.

The Clerk first addresses the non-controversial items. He has confirmed that Depomed asks for a reasonable number of days of attendance for each witness, including necessary days of travel. Defendants do not contest this category, and therefore, those costs are granted in full.

Defendants do not contest the lodging costs either and the Clerk has verified that Depomed has used the correct GSA rates except in two instances: 1/ the applicable rate for the August 14, 2014 Bernstein deposition in New York is $229.00/night, not $303.00; 2/ the correct rate for the September 10, 2015 Roush deposition in Washington, D.C. is $222.00/night, not $179.00. These corrections will be made below.

### *First- and Business-Class Airfare*

Defendants protest that most of the airfares requested are for first- or business-class travel, as specifically indicated in the submitted invoices or inferable therefrom, based upon the low assigned seat number. Depomed defends these airfares on the grounds that several flights were long-distance, international flights, some of the witnesses were of advanced age and "allowing such witnesses to travel in business- or first-class is the considerate and expected course." Dep.'s Reply at 9. Nonetheless, the Clerk agrees that due to the § 1821(c) requirement of using the "most economical common carrier," he must deny 50% of the requested first- or business-class airfare, as he has done in the past. Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc., Civ. No. 11-3962, 2016 WL 660601, at *8 (D.N.J. Feb. 18, 2016) (citing cases). These adjustments will be made in the calculations below.

### *Dr. Bernstein*

Next, the Clerk addresses Defendants' objections to the fees of Dr. Bernstein, who testified at depositions in New York on August 14, 2014 ($6,656.31) and in Washington, D.C. on October 1, 2015 ($7,941.63), and at trial in Newark on March 21 and 22, 2016 ($13,439.96). Defendants complain that for his trial testimony, rather than book a round-trip ticket, this witness flew out of one location, i.e., Shanghai, and back to a different location, i.e., Abu Dhabi.

-20-

For his August 2014 and October 2015 depositions, Dr. Bernstein traveled round-trip between Tel Aviv and New York, and round-trip between Tel Aviv and Washington, D.C., respectively. Defendants press for the denial of all such airfares on the ground that based upon the foregoing, the place of Dr. Bernstein's residence is ambiguous and § 1821(c) restricts travel to and from the witness' "residence" and to the "shortest practical route." They argue alternatively for a reduction in taxation because the class of the tickets was either business-class, as shown on the receipts, or presumably so, given the high price tags. Defs.' Opp. at 10-12.

The Clerk rejects Defendants' argument for outright denial of the airfares. Depomed has explained that Dr. Bernstein teaches in both Abu Dhabi and Shangai, Dep.'s Reply at 10, and Defendants themselves admit that Dr. Bernstein testified to splitting his time between those two locations, Defs.' Opp. at 10. Therefore, he takes part-time residence at both places and had a legitimate reason to fly to Abu Dhabi after the trial. The Clerk will not read the statute to require that a witness neglect his professional obligations due to litigation commitments. Also, Depomed points out that the Newark to Abu Dhabi distance is shorter than the Newark to Shanghai distance and Defendants have not shown that a round-trip Newark/Shanghai ticket would have been cheaper. Dep.'s Reply at 10. As for Tel Aviv being the point of departure for this witness' depositions, Depomed explained in its reply that Dr. Bernstein's home address is in Tel Aviv. Id.

However, the Clerk does find the airfares to be expensive and will tax them at only 50%. The remaining costs of ground transportation for Dr. Bernstein's three appearances, undisputed by Defendants, have been supported and will be granted.

*Dr. Roush*

Depomed requests travel fees for Dr. Roush's trial testimony on March 22, 2016

($1,311.83), and his depositions in Washington, D.C. on September 10, 2015 ($2,128.40) and November 18, 2015 ($735.70). Defendants ask the Clerk to tax only $75.00, $1,158.65 and $530.40, respectively. Defs.' Opp. at 15. Depomed also asks for $527.20 in travel costs for Dr. Roush's September 5, 2014 deposition, and Defendants do not oppose that cost, which consists of an economy class airfare of $430.20, a $52.00 taxicab fare and a $45.00 parking fee.

Regarding the contested deposition travel costs, the Clerk accepts Defendants' argument that the three of the four flights that were first-class should be taxed at only 50%. The costs of ground transportation have not been challenged and they will be taxed in full.

As for Dr. Roush's travel costs for his trial testimony, Defendants ask the Clerk to tax only the $75.00 cost of the car from the Palm Beach International Airport to his home after the trial, stating, "Depomed's request for Dr. Roush's March 2016 travel expenses violate [sic] L. Civ. R. 54.1(b) in that the invoices appear to be incorrect, the natures of the charges cannot be readily ascertained and no proper invoice (or explanation) is provided." Defs.' Opp. at 13.

Depomed replies, "[t]he bottom line is that Depomed seeks costs for exactly what Dr. Roush invoiced with respect to his *trial* testimony: one flight into Newark before trial and one flight out of Newark after trial." Dep.'s Reply at 11.

After trying to piece together the various receipts filed, the Clerk agrees with Defendants that Depomed's submissions are confusing. There is no receipt for a flight into Newark before the trial and the two requested airfares consist of the Jet Blue return flight actually taken by Dr. Roush and the originally scheduled return Delta flight, which was cancelled in favor of the earlier Jet Blue flight. The Clerk grants just the $483.60 cost of the Jet Blue "Blue Plus" flight, which was basically a coach fare with an allowance for one free bag, but denies the cost of the Delta airfare.

Also, Depomed states that there is a "$244.13 expense for a car for Dr. Roush's trip to the airport following the trial." Dep.'s Reply at 11. However, Dr. Roush testified on March 22 and went to the airport that same night for his return flight, but the trip date for that car invoice is March 14. Due to this inconsistency, the Clerk will deny that cost as well. Taxed costs for Dr. Roush's travel consist of only the $483.60 Jet Blue airfare and the $75.00 car fare from the airport to Dr. Roush's home on March 22, or a total of $558.60.

Based upon all of the foregoing, the Clerk taxes the following witness fees, with * denoting travel costs that include at least one first- or business-class airfare, taxed at 50%:

| Witness | Attendance | Lodging | Travel | Total |
|---|---|---|---|---|
| Jack Anders | $ 80.00 | $136.00 | $1,994.83 | $ 2,210.83 |
| Joel Bernstein, trial-3/21, 22/16 | $120.00 | $272.00 | $6,672.96* | $ 7,064.96 |
| Joel Bernstein, 8/14/14 dep. | $120.00 | $458.00 | $3,010.31* | $ 3,588.31 |
| Joel Bernstein, 10/1/15 dep. | $ 80.00 | $222.00 | $3,874.63* | $ 4,176.63 |
| Michelle Brown, trial-3/14, 15, 23 | $200.00 | $408.00 | $1,215.49*[6] | $ 1,823.49 |
| Michelle Brown, 2/4/16 dep. | $120.00 | $358.00 | $ 386.02* | $ 864.02 |
| Helmut Buschmann, trial-3/10 | $120.00 | $272.00 | $2,146.41* | $ 2,538.41 |
| Thomas Christoph, trial-3/14 | $120.00 | $272.00 | $1,951.41* | $ 2,343.41 |
| Michael Gruss, trial-3/10, 11 | $160.00 | $408.00 | $2,280.16*[7] | $ 2,848.16 |
| Juergen Haeussler, trial-3/11 | $ 80.00 | $136.00 | $ 337.80 | $ 553.80 |

[6]     Using the appropriate GSA mileage rate of $.54/mi., the correct cost for 113 miles is $61.02 for each of two trips.

[7]     It is unclear how Depomed arrives at $114.14 for car and parking expenses. With an exchange rate of 1 Euro = US$1.1212, the 63.1 Euro cost is equivalent to US$70.75.

| Witness | Attendance | Lodging | Travel | Total |
| --- | --- | --- | --- | --- |
| Michael Ossipov, trial-3/23 | $120.00 | $272.00 | $ 785.34*[8] | $ 1,177.34 |
| Michael Ossipov, 1/29/16 dep. | $120.00 | $358.00 | $ 583.47* | $ 1,061.47 |
| William Roush, trial-3/22 | $120.00 | $272.00 | $ 558.60 | $ 950.60 |
| William Roush, 9/5/14 dep. | $ 80.00 | $303.00 | $ 527.20 | $ 910.20 |
| William Roush, 9/10/15 dep. | $120.00 | $444.00 | $1,158.70* | $ 1,722.70 |
| William Roush, 11/18/15 dep. | $ 80.00 | $179.00 | $ 530.40*[9] | $ 789.40 |
| Total: | | | | $34,623.73 |

Pursuant to § 1920 (3), witness fees are granted in the amount of **$34,623.73**.

## V.     Fees for Exemplification and Costs of Making Copies, § 1920 (4)

The balance and bulk of Depomed's requested costs, amounting to $181,205.64, fall under the § 1920 (4) category of "[f]ees for exemplification and the costs of making copies." Subsection (4) consists of two different prongs and under them, Depomed asks for: 1/ exemplification fees in the amount of $128,390.45 for visual aids ($77,310.45) and the multimedia equipment ($2,000.00) and trial support technicians to display them ($49,080.00) (listed as "other costs" on Depomed's AO 133 form); and 2/ the costs of making copies in the amount of $52,815.19, consisting of the cost of producing documents through the scanning

---

[8]     This figure was derived by including an overlooked $200.00 ticket change fee, granting 50% of the total airfare of $1,439.17, and adding in taxi costs of $30.75 and $35.00.

[9]     The departing Jet Blue flight is taxed in full at $241.10 but the return, first-class Delta airfare is taxed at 50%, or $205.30 and that amount is added to taxi ($39.00) and parking ($45.00).

of hard copy documents and conversion of native electronic files to TIFF ($26,699.68) and copying costs incurred for the preparation of trial materials ($26,115.51). Dep.'s Bill of Costs at 14-17. As set forth in Depomed's briefing, the Clerk addresses the latter of the two first and Defendants' assertion that none of these costs should be taxed.

## A. Costs of Making Copies

There are two components to Depomed's costs of making copies, i.e., the cost of production of documents and the cost of copying trial materials.

### Cost of Production of Documents

Under § 1920 (4), the costs of making copies are taxable only to the extent that the copies were "necessarily obtained for use in the case." As enunciated in the case law cited by the parties, a dichotomy exists between copies which are deemed necessary and those which merely serve the convenience of counsel. The cost of copies produced in discovery, and provided to opposing counsel and the court are taxable, as are the costs of trial exhibits, whereas the costs of general copying and copies made for the prevailing party are not.

Depomed describes this particular cost as "the scanning of hard copy documents and conversion of native electronic files to TIFF format for production to Defendants, totaling $26,699.67." Sitzman Decl. ¶10. As the Clerk noted earlier, this case was governed by a Stipulation and Order Concerning Protocol for Discovery of Electronically Stored Information ("ESI Order"), under which electronic files were to be "converted to *.tif image format with extracted or OCR text." [Dkt. Entry 154, ¶ 11a.].

The parties recognize that the taxability of discovery materials is here governed by the Third Circuit's ruling in the well-known case of Race Tires Am., Inc. v. Hoosier Racing Tire

Corp., 674 F.3d 158 (3d Cir. 2012). The facets of the appellate court's decision are discussed in the Clerk's earlier opinions but suffice it to say that the Court ruled that "only the scanning of hard copy documents, the conversion of native files to TIFF [there, the agreed-upon format], and the transfer of VHS tapes to DVD involved 'copying', and that the costs attributable to only those activities are recoverable under § 1920 (4)'s allowance for the 'costs of making copies of any materials.'" Id. at 171.

The costs sought to be taxed here are described in the supporting invoices of Merrill Communication LLC as those for "Electronic Processing – File Conversion to TIFF," "Scan - Medium," "Labor - Technical Labor," "Scan - Color," "Scan - 11" x 17" - B/W," "Copy - Glasswork," "Scan - Difficult Heavy," "Scan - 11" x 17" - Color," "Scan - Oversize B/W Per Sq Ft," "Scan - Heavy." Dep.'s Bill of Costs, Ex. 9. The charged services shown on the invoices of Lighthouse eDiscovery are for "Native Export for Review," "Image to Image Conversion," "Native Conversion to TIFF or PDF," and "Production - PDF Conversion." Id.

Defendants object to all of the costs on the grounds that the charges for technical labor are non-recoverable, the requested costs include extraneous ESI charges which also fall outside of the costs permitted by the Race Tires Court, and the entries for scanning are ambiguous. Defs.' Opp. at 16-17. Depomed replies that Defendants' extensive requests for the production of documents led to the production of 1.8 million pages by Depomed and protests that all of its costs, with the possible exception of the costs of labor, are of the type allowed by the Third Circuit. Dep.'s Reply at 12-14.

The Clerk is bound by the Third Circuit's decision and will deny all costs not falling squarely within that ruling. These include the costs of labor, previously denied by the Clerk

in <u>Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc.</u>, Civ. Nos. 08-6304, 09-2073, 09-1233, 2013 WL 1876441, at *12 (D.N.J. Apr. 18, 2013), and the costs of "Native Export for Review," "Image to Image Conversion," and "Production - PDF Conversion."

All charges for copying and scanning as well as the costs of "Electronic Processing – File Conversion to TIFF" and "Native Conversion to TIFF or PDF" are granted. Defendants point out that the Clerk has previously denied costs described by the prevailing party as scanning costs, but in the one cited case, none of the invoice charges were for the scanning of hard copy documents for the losing party. <u>Prometheus Labs., Inc. v. Roxane Labs., Inc.</u>, Civ. Nos. 11-230, 11-1241, 2016 WL 1559144, at *13 (D.N.J. Apr. 18, 2016), cited in Defs.' Opp. at 16. In the other case cited by Defendants, <u>id.</u> at 17, the Clerk disallowed a scanning cost because he could not discern whether the cost was for the scanning of hard copy documents or of electronic documents. <u>Purdue Pharm. Products L.P. v. Actavis Elizabeth LLC</u>, Civ. No. 12-5311, 2016 WL 3450809, at *12 (D.N.J. June 20, 2016).

In the month preceding the <u>Prometheus Labs.</u> decision, the Third Circuit clarified its earlier <u>Race Tires</u> ruling, explaining that "[e]ven the term 'scanning,' as used in *Race Tires*, applied only to the 'scanning of *hard copy* documents' as 'making copies' for the requesting party. 674 F.3d at 171 (emphasis added)." <u>Camesi v. Univ. of Pittsburg Med. Ctr</u>, 673 F. App'x 141, 148 (3d Cir. 2016). The <u>Camesi</u> Court distinguished that taxable activity from the non-taxable service of scanning electronic documents for the benefit of the responding party.

In the case at bar, Depomed's counsel has averred that this $26,699.68 cost was for "the scanning of hard copy documents and conversion of native electronic files to TIFF format for production to Defendants" under the ESI Order, Sitzman Decl. ¶ 9, not the scanning of electronic

documents for Depomed's own benefit. Therefore, the Clerk grants **$25,566.52** in scanning and conversion costs and denies the balance of $1,113.16.[10]

### *Cost of Photocopies*

The other § 1920 (4) "cost[s] of making copies" sought by Depomed is the $26,115.51 cost of photocopies incurred during the trial, consisting of $7,373.16 in charges of third party PCTechnologies and the $18,742.35 cost of Equitrac copies made in-house. Depomed's counsel describes this category of costs as including "the expense of preparing copies of deposition transcripts and materials for witness binders provided to witnesses, submitted to the Court, and provided to opposing counsel during trial, as well as ordinary copying expenses reasonably incurred in the trial of this complex patent case." Sitzman Decl. ¶ 11. Depomed further explains in its reply that "Depomed set up in-house copy facilities at the Marriot International Hotel in Newark solely for the purposes of trial in this matter" and therefore, the "copies were necessarily made for the trial." Dep.'s Reply at 15.

Defendants would have the Clerk deny all such costs for lack of sufficient detail as to what documents were copied, why the copies were necessary and the cost per page. Defs.' Sur-Reply at 4. They point out that "Depomed's invoices, representing the copying of many thousands of pages, stand in contrast to the approximately 390 exhibits admitted in this case." Defs.' Opp. at 18. They argue that "28 U.S.C. 1920(4) and Local Rule 54.1(g)(10) do not permit the prevailing party to recover the cost of every page photocopied in the month of the trial" and that "Depomed fails to meet its burden of explaining why the ordinary copying expenses were

---

[10]     By the Clerk's calculation, costs requested in this category, as shown in Depomed's Ex. 9, actually total $26,679.68, not $26,699.67.

necessary for trial and were not simply for the convenience of counsel."[11]  Id.  Further, they

contend that the included costs of binders, binding and tabs are non-taxable.  Id at 18-19.

It is true that the prevailing party bears the burden of stating the general purpose of

the photocopies, their necessity and their cost, but it need not give an economically unfeasible

page-by-page justification.  The Clerk appreciates the volume of copies which was necessary

during the trial, especially because Depomed prepared a different witness binder for each

witness and made nine copies thereof, i.e., one for the Judge, court reporter, witness, judge's

staff, co-counsel for Plaintiff Grunenthal, Defendant Actavis, Defendant Roxane, Defendant

Alkem and one copy for itself.  Sitzman Decl. ¶ 11.

However, the Clerk finds that based upon Defendants' objections, deductions are

warranted.  First off, this Court and the Clerk have previously found that the costs of tabs,

binders and the like are non-taxable as they do not constitute "copies" and fall rather under the

rubric of attorney's fees.  See e.g., Warner Chilcott Labs. Ireland Ltd., 2013 WL 1876441 at *12

(citing cases).  Depomed argues in reply that "the Court requested binders for each witness,

itself and staff and for all opposing parties," and "these costs were incurred at the Court's request

in connection with the examination of witnesses."  Dep.'s Reply at 16.  However, the Court's

imposition of certain requirements does not convert non-taxable attorney overhead into taxable

photocopies.  Congress did not intend to make taxable the costs of all services made necessary

by order of the court.

---

[11]     The Clerk believes that Depomed meant to refer not to subsection (g ) (10) of
L. Civ. R. 54.1, which applies to visual aids, but to (g) (9), which provides in relevant part that
"[t]he cost of copies obtained for counsel's own use is not taxable."

Therefore, the Clerk will deduct off the top of the requested total of $26,115.51: the $1,461.94 cost of binding, drilling and binders ($1,366.30 + 7% tax of $95.64) in the PCTechnologies invoice; and the $1,779.15 in-house cost of same, or a total of $3,241.09. Dep.'s Bill of Costs, Ex. 10. The cost of the actual photocopies, for further consideration by the Clerk, totals $22,874.42.

The Clerk has some concerns with the requested cost of the photocopies themselves. First, Depomed's counsel admits that these photocopies include "ordinary expenses reasonably incurred in the trial of this complex patent case." Sitzman Decl. ¶ 11. As Defendants point out, "[t]hose copies could include anything from internal use documents to extra copy sets of materials to support counsel," Defs.' Opp. at 17, such as copies of deposition transcripts for Depomed's counsel who attended trial. The Clerk notes that on most days of the trial, six attorneys appeared on behalf of Depomed and Janssen. [Dkt. Entries 426-30, 433]. The costs of copies for the convenience of Depomed's counsel are not recoverable.

Also, Defendants point out that the Equitrac copies were made at the rates of both $.10 and $.20 per page and Depomed has failed to explain the reason for this variation. Defs.' Sur-Reply at 4 n.1. For example, the $.20 per page rate was applied in two entries on March 9 for 2,330 and 3,290 copies (charged at $466.00 and $658.00) and in two entries on March 16 for 2,618 and 2,728 copies (charged at $523.60 and $545.60). This rate is high for 8" x 11" black and white copies, which the Clerk usually taxes at the maximum rate of $.15 per page, and he is left to guess the reason for the unexplained $.20 rate, e.g., oversized or color copies. Without undertaking the tedious task of tabulation, the Clerk notes that a good percentage of the Equitrac copies were charged at the higher rate of $.20 per page.

Accordingly, in order to balance the presumption in favor of granting costs to prevailing party Depomed and its somewhat deficient justification, the Clerk will grant 50% of the total $22,874.42 cost of photocopies, or **$11,437.21**.

Combining the granted cost of photocopies ($11,437.21) with that of producing discovery ($25,566.52), the § 1920 (4) costs of making copies are allowed in the amount of **$37,003.73**.

## B.   Fees for Exemplification

The final costs for which Depomed seeks reimbursement are the § 1920 (4) "fees for exemplification," comprised of the costs of visual aids ($77,310.45), and the multimedia equipment ($2,000.00) and trial support technicians ($49,080.00) to display them, amounting to $128,390.45.  Defendants oppose all such costs.  Defs.' Opp. at 19-21, Defs.' Sur-Reply at 4-5.

### *Visual Aids*

Depomed seeks the costs of Suann Ingle Associates, LLC. for "decisive trial design," charged at the rate of $250.00/hr.  Dep.'s Bill of Costs, Ex. 11.  The services for which Depomed requests compensation are described in the supporting invoices as "created" and "edited" "PPT" and "images."  Counsel explains that "[t]hese demonstratives and visual aids were prepared to aid the Court in viewing the evidence in the case and to ensure that witness examination proceeded efficiently given the complexity of the scientific topics covered and the large number of exhibits admitted into evidence."  Sitzman Decl. ¶ 12.

Depomed argues that the preparation of demonstratives was reasonably and necessarily obtained for use in this case, and in support, it cites decisions by this Court in the Thabault case, 2009 WL at 69332, and by the Clerk in Merck Sharp & Dohme Pharms., SRL v. Teva Pharms. USA, Inc., Civ. No. 07-1596, 2010 WL 1381413 (D.N.J. Mar. 31, 2010), wherein the costs of demonstratives were granted.

-31-

The taxation of "exemplification," which usually involves high costs, is a muddled area of law in which courts have ruled variously throughout the country. Two approaches have been taken, i.e., the strict construction of the term by certain circuits, as used in Black's Law Dictionary, of "an official transcript of a public record, authenticated as a true copy for use as evidence," and the broader construction of an "act of illustration by example," used by other circuit courts. Warner Chilcott Labs. Ireland Ltd., 2013 WL 1876441, at *13-14.

Unfortunately for this Clerk, the Third Circuit has endorsed neither position, as it has not yet defined "exemplification" for the purpose of applying § 1920 (4). Even so, the Clerk is ever mindful of the restrictive interpretation of § 1920 taken by the United States Supreme Court in the Taniguchi case and the Third Circuit in the Race Tires case since the issuance of the Thabault and Merck decisions. He has previously denied the costs of visuals on the grounds that the charges involved were for intellectual efforts, rather than for physical preparation, and because the services performed were those of consultants, which the Supreme Court warned in Taniguchi were not taxable. Id. at 13-17; Prometheus Labs., Inc., 2016 WL 1559144, at *13-14.

Depomed points out that post-Taniguchi and Race Tires, this Court awarded the costs of visual aids in a complex patent case, such as this, where the prevailing party limited its request to the costs of the physical preparation of the visual aids. Otsuka Pharm. Co., Ltd. v. Sandoz, Inc., Civ. No. 07-1000, 2015 WL 5921049, at *9 (D.N.J. Oct. 9, 2015). Quoting the Thabault case, the Court stated that "the use of an outside vendor to prepare trial preparation materials and visual aids was an 'ordinary litigation expense[] reasonably incurred in the prosecution of [a] massive, complex litigation' and cannot be considered for the convenience of counsel." Id.; Dep.'s Reply at 17-18.

The Clerk denies the cost of visuals in the instant case because Depomed has not fulfilled its burden of demonstrating their necessity to him. While Judge Cooper may have appreciated the value of the demonstratives in the <u>Otsuka</u> case, the Clerk here is at a loss, not having had the benefit of witnessing the trial and being restricted to the entries on the docket. In the case of <u>Lochbridge v. Lindsey Mgmt. Co., Inc.</u>, Case No. 5:12-CV-5047, 2016 WL 6780330, at *5 (W.D. Ark. Nov. 15, 2016), wherein the prevailing party sought the cost of demonstrative boards used during the trial, the court stated, "[t]he Court has no information about these trial boards, as neither party described them with any particularity in its briefing, and the undersigned was not the trial judge in this case and therefore did not observe exactly how the boards were used at the trial." <u>Id.</u> The court there found there was insufficient evidence to evaluate whether the items were necessary for trial or "instead were more along the lines of an extravagant, unneeded purchase." <u>Id.</u>

While the Clerk presumes that the invoice description of "PPT" refers to a powerpoint presentation, Depomed has not described the nature of the demonstratives. For example, the first entry appears to be a slide of a timeline. The subsequent four charges seem to include those for the creation and/or editing of slides showing the curriculum vitae of the experts involved, e.g., "created Bernstein CV PPT," "edited Steed Cross, Bernstein CV," "created C.V. PPT decks for expert witnesses Roush and McClurg," and "created and edited expert witness C.V. PPTs." The Clerk does not appreciate the necessity of slides prepared at the rate of $250 per hour to show a timeline or the experts' qualifications. Sometime in the past, such uncomplicated displays such as a timeline or curriculum vitae would have been prepared for the Court by legal

staff on a poster board or 8" x 11" sheets.  Further, the Clerk presumes that much of this material was presented in the binders addressed earlier.

The "Graphic Production" entries during the trial which might include charges for the physical preparation of demonstratives all also include charges for "on call for graphics requests throughout the day," or "on call all day," again, at the rate of $250/hr. for up to 14.5 hours. Additionally, Depomed has not explained what the "images" for "Bernstein direct," "Roush direct," "Brown direct," and "Christoph direct" entail.  Further, the second invoice from Suann Ingle Associates, LLC. covers the charges of creating and editing slides and images for Depomed's closing, which merely illustrate argument of counsel.  Nor does Depomed describe the five poster boards of which it seeks the costs.

The Clerk understands that this was a complex patent case which involved multiple parties and patents, and a 10-day trial, resulting in a 167-page bench opinion which addressed the testimony of 16 live witnesses and about 400 admitted exhibits [Dkt. Entry 536].  The Clerk can only surmise that the demonstratives included slides of chemical structures of compounds, tapentadol hydrochloride in particular, because, as Depomed points out, the Court cited to such demonstratives in its opinion.  Dep.'s Reply at 17.

However, in that opinion, presiding Judge Claire C. Cecchi stated, "[s]ome of the citations in this Opinion contain the demonstratives presented by the witnesses at trial.  The demonstratives do not constitute evidence."  [Dkt. Entry 536 at 27 n.7].  Judge Cecchi further clarified, "[a]ny demonstrative included in the citations is for convenience and information purposes only and is to be understood in the context of the testimony given in conjunction with the demonstrative."  Id.

Our local rule, L. Civ. R. 54.1(g) (10), specifies that "[t]he reasonable expense of preparing visual aids . . . is taxable as costs when such visual aids are admitted into evidence" and Judge Cecchi noted that the demonstratives did not constitute evidence. Depomed points out that despite the constraint of that rule, the cost of visual aids has been granted in this district even when the demonstrative exhibits were not admitted into evidence. Dep.'s Reply at 17-18.

Nevertheless, even if the Third Circuit were to embrace the broader definition of "exemplification," under § 1920 (4), the demonstrative aids must still have been "necessarily obtained." This requirement has been interpreted to exclude the recovery of visuals which merely illustrated expert testimony or counsel's argument. <u>Summit Tech., Inc. v. Nidek Co., Ltd.</u>, 435 F.3d 1371, 1377 (Fed. Cir. 2006) ("As Moore's Federal Practice notes, 'a video exhibit or a physical model may not qualify as an "exemplification" if it is essentially explanatory and argumentative, serving merely as an aid to the argument of counsel and the explanations of expert witnesses.' 10 James Wm. Moore et al., <i>Moore's Federal Practice</i> § 54.103[3][d] (3d ed.2005).").

In addition to stating that the demonstratives were explanatory, in the sense that "they were prepared to aid the Court in viewing the evidence in the case," Sitzman Decl. ¶ 12, Depomed's counsel justifies this cost on the ground that the demonstratives "ensure[d] that witness examination proceeded efficiently given the complexity of the scientific topics covered and the large number of exhibits admitted into evidence," <u>id.</u> This very argument was rejected by one court, which reasoned,

> But, to employ this relaxed standard for "necessity" is to read the requirement out of the statute entirely—every demonstrative expedites presentation of the issues and makes trial more efficient. Moreover, the incentives of an attorney are to develop trial techniques beyond what is strictly "necessary" for the presentation of their case. However, the

statute only allows recovery for exemplifications that were "necessarily obtained for use in the case," not for those that merely make trial more efficient, convenient, or expeditious. § 1920(4). This interpretation is necessary to avoid the allure of expending vast sums of money on elaborate, professionally prepared exhibits and electronic presentations that might have jury appeal, but such sensational expense should appropriately be borne at the peril of excessively imaginative counsel.

Jo Ann Howard & Assocs., P.C. v. Cassity, 146 F. Supp. 3d 1071, 1087 (E.D. Mo. 2015).

The Clerk cannot find that the visual aids in this case were necessary, particularly when Judge Cecchi herself described them as a "convenience." Therefore, he denies all such costs, noting that L. Civ. R. 54.1(g) (10) also advises counsel to obtain a court order before incurring the expense of such visual aids.

### Rental of Multimedia Equipment

In order to present the visual aids, Depomed rented multimedia equipment during the two weeks of trial and now asks the Clerk to reimburse that $2,000.00 cost, described in the Suann Ingle Associates, LLC. invoice as: "SIA Equipment Rental for GDC trial team war room and courtroom. 2 weeks of trial @ $1,000 per week (cables, printer, router, projector, monitor, switch, adapters)." Dep.'s Bill of Costs, Ex. 11. Defendants contest this cost as well, citing the Clerk's prior denial of this type of cost in his more recent Purdue Pharmaceutical Products decision, 2016 WL 3450809, at *14. Defs.' Opp. at 21-22.

The Clerk must deny this cost for several reasons. First, if Depomed has failed to show the necessity of the visual aids, by logical extension, it has not shown the need of the equipment to display those aids. Secondly, as noted in the above-cited Jo Ann Howard case, 146 F. Supp. 3d at 1087, Depomed has not shown that the courtroom's electronic display system was insufficient. Thirdly, while Depomed's counsel describes this charge as covering "the rental of multimedia equipment for displaying the demonstratives, trial exhibits, and visual aids in the

courtroom," Sitzman Decl. ¶ 13, it is clear from the above-cited description that it covers the costs of equipment in the war room in addition to that in the courtroom. The requested cost includes charges for equipment which served the convenience of Depomed's counsel and was not necessary.

### *Trial Support Technicians*

The final, but not insignificant, expense requested by Depomed is the $49,080.00 cost of trial support technicians, described in the Suann Ingle Associates, LLC. invoices as "Trial Preparation," charged at rates of $200.00 and $250.00 per hour, and "Trial Presentation Consulting," charged at $200.00, $300.00 and $350.00 per hour.[12] Dep.'s Bill of Costs, Ex. 11. An example of a "Trial Preparation" entry, made during closings, is "[m]eet Aquip installers at courthouse, supervise and test courtroom equipment installation." The costliest charge for "Trial Presentation Consulting," at $5,950.00, incurred during 17 hours on the third day of trial, was for "[f]urther develop visuals for trial per Sitzman, T Best, D Glandorf, T Kwang, C Ranney, J Chung; attend trial and coordinate presentations; Direct C Gwinn."

Defendants contest this cost on the ground that the Clerk has previously denied this class of expense, finding it akin to expert fees, and also, because some of the entries, such as the one cited above, include the cost of developing visuals, which they maintain are non-taxable. Defs.' Opp. at 22-23.

In its reply, Depomed opines that "there is a relative dearth of cases addressing this subject in this district," Dep.'s Reply at 20, and relies instead upon cases outside of this district

---

[12] Depomed shows $49,080.00 as the total for this type of "other" cost on its AO 133 form but refers to a "reimbursement of $44,880.00" in its Reply at 19. The Clerk has not undertaken the task of tallying the charges as he is denying this cost in any event.

and a 2007 decision, rendered by our former Chief Judge Brown, at a time when costs were also

granted for the cost of legal research, a clearly non-compensable cost today.  Ricoh Corp. v.

Pitney Bowes Inc., Civ. No. 02-5639, 2007 WL 1852553, at *3 (D.N.J. June 26, 2007).

　　While it too is a case outside of this district, the Clerk finds appealing the reasoning used

by the Jo Ann Howard court when it denied the cost of a litigation support specialist on the

ground of lack of necessity:

> Even if the use of the specialist "furthered the illustrative purpose" of the exhibits
> presented, it cannot be said the use of such a specialist was *necessary* to put on an
> intelligible case. *See Behlman v. Century Sur. Co.*, No. 4:12-CV-1567JAR, 2014 WL
> 2930658, at *1 (E.D.Mo. June 27, 2014) (disallowing recovery for a trial technician as
> not falling within the scope of § 1920). Plaintiffs' counsel could have presented their
> case, as many attorneys trying cases before this Court have historically done, through the
> use of PowerPoint or the courtroom electronic display system rather than hiring a third
> party vendor. . . . Where a cheaper, feasible alternative exists for the presentation of
> evidence to the finder of fact, costlier options may not be said to be "necessary" within
> the meaning of § 1920(4), and are instead merely "glitz" for which the losing party is not
> obligated to pay. *See Hunt v. City of Portland*, No. CV 08–802–AC, 2011 WL 3555772,
> at *14 (D.Or., Aug. 11, 2011) (citing *Cefalu*, 211 F.3d at 428); *Wheeler v. Carlton*, No.
> 3:06–CV–00068GTE, 2007 WL 1020481, at *11 (E.D.Ark., Apr. 2, 2007) (no recovery
> for tech vendor used to display exhibits at trial).

146 F. Supp. 3d at 1087-88.

　　Noting too the Taniguchi Court's observation that "[t]axable costs are a fraction of the

nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators,"

566 U.S. at 573, the Clerk reiterates his previously expressed view that the expenses of trial

technicians constitute non-taxable consultant or expert fees.  See, e.g., Mylan Inc., 2015 WL

1931139, at *9 (citing other decisions).  This conclusion is hard to refute here when the

submitted invoices themselves describe the services as "Trial Presentation Consulting."

　　In a fairly recent, very complex case in this district, a special master was appointed to

address the prevailing party's motion for attorney's fees and non-taxable costs, as well as its

bill of costs. Where Decision Quest's nearly $1.8 million charges for "trial consulting services" were requested, Special Master O'Keefe recommended that they be granted as a non-taxable cost within the attorney's fees motion, not as a taxable cost under Rule 54(d). Avaya, Inc. v. Telecom, Inc., Civ. No. 06-2490, 2016 WL 10590071, at *40-41 (D.N.J. Sept. 15, 2016). This Court did not have the opportunity to adopt Special Master O'Keefe's recommendation because the Third Circuit vacated the judgment in the underlying case soon thereafter, but his analysis has not been impugned.

This final "exemplification" fee, like the others, is denied. Pursuant to § 1920 (4), the fees for exemplification and the costs of making copies are taxed in the amount of **$37,003.73**.

## VI.     Summary

In sum, the Clerk taxes the following costs in favor of Depomed and against Defendants:

| | |
|---|---|
| Fees of the clerk and marshal, § 1920 (1): | $   2,268.34 |
| Fees for transcripts, § 1920 (2): | $  32,956.12 |
| Witness fees, § 1920 (3): | $  34,623.73 |
| Fees for exemplification and copies, § 1920 (4): | $  37,003.73 |
| **TOTAL:** | **$106,851.92** |

For the reasons set forth above, the motion of Plaintiff/Counterclaim Defendant Depomed, Inc. to tax costs against Defendants/Counterclaim Plaintiffs Actavis Elizabeth LLC, Actavis UT, Alkem Laboratories Limited and Roxane Laboratories, Inc. is hereby **GRANTED IN PART AND DENIED IN PART.** An appropriate order follows.

WILLIAM T. WALSH

By:  S/John T. O'Brien
       Deputy Clerk

February 21, 2018